IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SANGER POWERS, ROBERT LEGG,
JENNIFER McCREARY, BETTY OWEN,
and LYDIA POSTOLOWSKI,
individually and on behalf of all others
similarly situated,

                Plaintiffs,

v.

FILTERS FAST, LLC,

                Defendant.

OPINION and ORDER

20-cv-982-jdp

---

This is a class action involving a data breach that compromised credit card information of defendant Filters Fast, LLC's customers between July 2019 and July 2020. The parties move for final approval of a class settlement and plaintiffs' counsel move for fees and costs. Dkt. 50 and Dkt. 46. Before the court can grant either motion, plaintiffs and plaintiffs' counsel will have to address the concerns of the court related to the adequacy of the notice, the fairness of the settlement, and the reasonableness of class counsel's request for fees and costs.

ANALYSIS

**A. Notice**

The court's first concern relates to the adequacy of the notice to the class. The claims administrator says that it provided the following notice: (1) an email to all class members on December 8, 2021; (2) a second email on January 6 to any class member who hadn't yet submitted a claim; and (3) a letter sent through the postal service to any class member who

couldn't be reached by email. Dkt. 53, ¶¶ 9–11. Using these methods, the administrator estimates that 89 percent of the class received notice. *Id.*, ¶ 14.

The notice appears adequate on its face. But despite the administrator's efforts, the administrator represents that it has received only 69 claims through the mail and 3,476 claims submitted electronically. *Id.*, ¶ 17. Plaintiffs estimate that the class includes more 323,000 members, so the total number of claims represents a little more than one percent of the class members. This is so even though each class member was entitled to submit a claim for $25 without showing any individualized injury. Dkt. 35-1, ¶ 42.

Plaintiffs offer no explanation for what appears to be a low response rate in a context where there was little downside to submitting a claim. Part of the reason for the relatively few claims may be that the deadline for submitting the motion for final approval was January 28, but the deadline for submitting a claim was February 11, so the administrator's figures were incomplete. But there may be other reasons. The administrator's explanation of its notice procedures is rather vague. It doesn't explain how it determined that 89 percent of the class received notice. And though it provided a copy of the legal notice accompanying the emails it sent the class, it doesn't provide a sample of the actual email it sent, making it impossible for the court to determine whether the email adequately communicated to class members that they were receiving notice of a class settlement.

To help establish the adequacy of the notice provided, plaintiffs must do the following: (1) provide updated figures of the number of class members who have submitted claims as of February 11; (2) provide evidence that the response rate in this case is reasonable, such as data from other cases involving similar claims; (3) explain how the administrator determined that

2

89 percent of class members received notice; and (4) provide a copy of the emails and letters that the administrator sent to the class.

## B. Settlement amount

The court's second concern relates to the cash portion of the proposed settlement. Plaintiffs say that class members have submitted claims totaling more than $103,000. But plaintiffs don't say that the administrator has *approved* that amount. Rather, plaintiffs say that the claims "are subject to vetting for fraud and duplications." Dkt. 51, at 16 n.4.

In evaluating the fairness of the settlement, the court must consider the "relief provided" to the class, not the "relief requested." *See* Fed. R. Civ. P. 23(e)(2); *see also Eubank v. Pella Corp.*, 753 F.3d 718, 726 (7th Cir. 2014) (rejecting proposed class settlement in part because of the contingent nature of the relief provided to the class). So the court will give plaintiffs an opportunity to identify the claims that have been approved and their value. If any claims have been rejected or if the administrator is still reviewing them, plaintiffs should explain why and provide any relevant documentation. Plaintiffs should also show cause why any claims that are still being reviewed should not be excluded from the amount of the settlement for the purpose of determining whether the settlement is fair and reasonable under Rule 23 and for the purpose of evaluating the reasonableness of the fee petition submitted by plaintiffs' counsel.

## C. Fees and costs

The court has multiple concerns related to plaintiffs' counsel's petition for approximately $305,000 in fees and $15,000 in costs. As an initial matter, counsel didn't comply with this court's procedures, which requires fee petitions to be accompanied by billing logs, among other things.[1] Counsel should carefully review those procedures and submit a new

---

[1] *See* Standard Attachments for Civil Cases Assigned to Judge Peterson, at 39, *available at*

petition that complies with them, including a new lodestar analysis. Counsel should also submit an itemized list of their costs.

The larger issue is that counsel's fee and costs request represents nearly three times the potential cash settlement to be paid to the class. As counsel themselves point out, the general rule in this circuit is that "fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782–83 (7th Cir. 2014).

Counsel say that their requested fees and costs are "only approximately 22% of the value actually claimed" by the class. Dkt. 47, at 20.[2] To arrive at that figure, counsel assume that it is appropriate to consider not only the cash payments provided to the class but also the value of the credit monitoring services that Filters Fast will provide and several "business practice changes" that Filters Fast has implemented to prevent future data breaches, including greater security and monitoring. Dkt. 47, at 13 and Dkt. 35-1, ¶ 46. Plaintiffs' counsel value the credit monitoring services at $478,440 and the business practice changes at $528,269.43. Dkt. 47, at 14.

---

https://www.wiwd.uscourts.gov/judge-specific-procedures.

[2] Counsel also say that their request for fees and costs represents "less than 1% of the value benefit negotiated," on the theory that the settlement allowed each class member to request up to $750 for reimbursement expenses and up to $60 for lost time, and that there was no cap on the aggregate amount claimed. Dkt. 47, at 21. Because there are so many class members, the settlement would be many millions of dollars if every class member recovered the maximum amount. But the court of appeals has rejected the view that the fairness of a settlement or the reasonableness of a fee request is measured against a theoretical amount that the defendant could have paid out. *See Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832 (7th Cir. 2018). So the court declines to consider a potential maximum benefit that bears no resemblance to the benefits that will actually be provided to the class.

Counsel's reliance on the nonmonetary benefits to justify their fee petition has multiple problems. The first problem is that *Pearson* states that the proper comparison is between the fee request and "the total amount of money going to class members and their counsel." 772 F.3d at 782–83. Counsel cite no authority for the view that they may use nonmonetary benefits to justify a larger fee award; they simply assume that they can. *Pearson* does include a discussion of injunctive relief, but the court concluded that the district court was within its discretion to find that the parties' proposed injunction provided no benefit to the class. *Id*. at 786. The court didn't consider whether or how injunctive relief factors into the reasonableness of a fee request. Other courts have concluded that it is more appropriate to evaluate a fee petition under a lodestar analysis when the primary benefit is injunctive relief, particularly when counsel fails to provide evidence on the value of that relief. *See Kim v. Allison*, 8 F.4th 1170, 1180–81 (9th Cir. 2021); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055–56 (9th Cir. 2019).

This leads to the second problem: plaintiffs' counsel provided no documentation or even explanation for how they came up with the values for the credit monitoring services and the changes in Filters Fast's business practices. If counsel wishes to rely on the value of nonmonetary relief to bolster a fee petition, they will have to do more than provide a bottom-line figure.

The third set of problems relates specifically to the changes in Filters Fast's business practices. This case has been certified as a class for *damages* under Federal Rule of Civil Procedure 23(b)(3), and the class includes only those who used their credit cards on Filters Fast's website in 2019 and 2020, not potential future customers. Plaintiffs' counsel points to no evidence or even allegations that any class member is likely to use Filters Fast's website again. So the benefit these changes provide to the class is questionable.

5

Moreover, the settlement agreement states that Filters Fast has already made most of the changes to its business practices. Dkt. 35-1, ¶ 46. The parties don't represent that Filters Fast made the cited changes as a result of its settlement negotiations with plaintiffs. Plaintiffs' counsel cannot justify a larger fee request based on a "benefit" that Filters Fast would have provided even without the settlement agreement.

Yet another problem with the business practice changes is that the settlement agreement provides no mechanism for a class member to confirm, challenge, or enforce any of the identified changes. This portion of the settlement agreement consists of little more than vague assertions that Filters Fast has or will make certain changes without any accountability for Filters Fast. In fact, the settlement agreement states that the provision "does not create any rights or obligation" and that Filters Fact is entitled to "modify the business practices described in this Paragraph." *Id.* So it is simply inaccurate to refer to the business practice changes as "injunctive relief." Filters Fast retains discretion to do whatever it wants with these practices, and the class is powerless to stop it.

All this is to say that the court is dubious that a fee request of more than $300,000 can be justified in this case based on a percentage-of-recovery analysis. Even if the court were to exclude only the proposed value of the business practice changes and consider the estimated value of credit monitoring services, plaintiffs' counsel's fee request would represent well over 50 percent of the total amount, which is outside the acceptable range. If plaintiffs' counsel still believes that their fee request is appropriate as a percentage of recovery, they will have to file a renewed motion that addresses all of the court's concerns.

Plaintiffs' counsel says that their fee request can also be justified under a lodestar approach. But fees of more than $300,000 would be surprising in a case that didn't proceed

6

past the preliminary pretrial conference and in which plaintiffs didn't file a single substantive motion before moving for preliminary approval of the settlement. The only evidence of the reasonableness of their fees under a lodestar approach are conclusory assertions in their declarations. Dkt. 49, ¶¶ 13–21 and Dkt. 48, ¶¶ 25–33. That's not enough. As already discussed, plaintiffs will need to submit a new petition for fees and costs that complies with this court's procedures and is otherwise consistent with this circuit's requirements for showing reasonableness under a lodestar approach.

Among other things, counsel's renewed motion should address potential concerns about duplication of effort, failure to delegate, and excessive hourly rates. *See Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.*, 574 F.3d 852, 858–59 (7th Cir. 2009) (affirming fee reduction for duplicative work and partners' failure to delegate appropriate tasks to associates and paralegals). The declarations of plaintiffs' counsel show that no fewer than eight attorneys and five paralegals from multiple law firms were assigned to this case and that five of the attorneys billed at rates of $700 an hour or more. Counsel should also address the question of what should be done about any excessive fees. Should they be distributed to the class, or should they revert to Filters Fast? Finally, plaintiffs' counsel should exclude from their fee petition work spent on their original motion for final approval of the settlement and on their original petition for fees and costs, unless counsel shows that they reasonably relied on the same work to support the renewed motions.

ORDER

IT IS ORDERED that the motions for final approval of the settlement agreement and for attorney fees and costs, Dkt. 46 and Dkt. 50, are DENIED without prejudice. The parties may have until February 22, 2022, to submit renewed motions.

Entered February 15, 2022.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge