# EXHIBIT B

*to*

*Plaintiffs' Memorandum of Law In Support of Their Renewed, Unopposed Motion for Attorneys' Fees, Costs and Service Awards*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT COURT OF WISCONSIN**

SANGER POWERS, ROBERT LEGG,
JENNIFER McCREARY, BETTY OWEN, and
LYDIA POSTOLOWSKI, individually and on
behalf of all others similarly situated,

        Plaintiffs,

        v.

FILTERS FAST, LLC, a North Carolina
corporation,

        Defendant.

CASE NO. 3:20-cv-00982-jdp

**DECLARATION OF DAVID K. LIETZ IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

I, David K. Lietz, being competent to testify, make the following declaration:

1.      I am a partner of the law firm Mason Lietz & Klinger LLP ("MLK"), which was founded in March 2020. I am one of the lead attorneys for Plaintiffs and have been preliminarily appointed Class Counsel for the proposed Settlement Class. I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

**Counsel Experience and Qualifications**

2.      The attorneys seeking to be named Class Counsel in this matter—William B. Federman of Federman and Sherwood and I—have extensive experience in class action litigation generally and data breach class action litigation in particular.

3.      I have been licensed to practice law in the District of Columbia since 1991, am a member of the bars of numerous federal district and appellate courts, and have decades of litigation and class action experience. I have been admitted to practice *pro hac vice* in this matter.

4.      MLK Attorneys have served as Lead Counsel, Co-Counsel or Class Counsel on dozens of class actions ranging from defective construction materials, (i.e. defective radiant heating systems, siding, shingles, and windows), to misrepresented and recalled products (e.g., dog food, prenatal vitamins), and environmental incidents (the Exxon Valdez, BP Oil Spill).

5.      These cases include: *Hill's Pet Food MDL*,[1] where MLK served as court-appointed Co-Lead Counsel, *Cox v. Shell Oil Co*., No. 18844, 1995 WL 775363 (Ch. Ct. Tenn., July 31, 1995) (defective polybutylene pipe; $950 million settlement); *Hobbie v. RCR Holdings*, *II, LLC*, No. 10-113, MDL No. 2047 (E.D. La. filed April 20, 2010) (354 unit condominium built with Chinese Drywall; settlement for complete remediation at cost of $300 million); *Adams v. Fed. Materials*, No. 5:05-CV-90-R, 2006 WL 3772065 (W.D. Ky. Dec. 19, 2006) (350 owners of commercial and residential property whose structures were built with defective concrete; $10.1 million settlement); *In re MI Windows & Doors Inc. Prod. Liab. Litig*., No. 2:12-MN-00001-DCN, MDL No. 2333, 2015 WL 4487734 (D.S.C. July 23, 2015) (defective windows; claims made settlement for over 1 million homes); *In re Synthetic Stucco Litig*., No. 5:96-CV-287-BR(2), 2004

---

[1] *In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litg.*, MDL No. 2887, No. 2:19-md-02887 (D. Kan. Filed June 6, 2019; final approval granted Oct. 2021).

WL 2881131 (E.D.N.C. May 11, 2004) (settlements with four EIFS Manufacturers for North Carolina homeowners valued at more than $50 million); *Posey v. Dryvit Sys., Inc.*, No. 17,715-IV, 2002 WL 34249530 (Tenn. Cir. Ct. Oct. 1, 2002) (Co-Lead Counsel; national class action settlement provided cash and repairs to more than 7,000 claimants); *Galanti v. Goodyear Tire & Rubber Co.*, No. 03CV00209, 2004 WL 6033527 (D.N.J. Nov. 17, 2004) (Class counsel; defective radiant heating systems; $330 million settlement); and *In re Zurn Pex Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088 (D. Minn. Feb. 27, 2013) (Plaintiffs' Executive Committee; +$20 million claims made settlement).

6.    With respect to privacy cases, MLK is presently litigating more than fifty cases across the country involving violations of the TCPA, privacy violations, data breaches, and ransomware attacks.

7.    MLK also serves as Court-appointed Liaison Counsel in *In re U.S. Off. of Pers. Mgmt. Data Security Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017).

8.    Attorneys at MLK were also Co-Lead Counsel in *In re Dep't of Veterans Aff. (VA) Data Theft Litig.*, No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) (unlawful disclosure of PPI of 28.5 million military veterans and active duty personnel; $20 million settlement fund) and court-appointed Lead Counsel in *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ($10 million settlement fund in case arising for unauthorized disclosure or personal information).

9.    It is noteworthy that just in the time since Mason Lietz & Klinger's inception on March 14, 2020, Mr. Lietz (either individually, or as a member of MLK) has been appointed class counsel in a number of data breach or data privacy cases, including:

    a.  *Kenney et al. v. Centerstone of America, Inc.*, Case No. 3:20-cv-01007 (M.D. Tenn.) (Mr. Lietz and Mr. Klinger appointed class counsel in data breach class

3

action settlement involving over 63,000 class members; final approval granted August 2021);

b.  *Baksh v. Ivy Rehab Network, Inc.*, Case No. 7:20-cv-01845-CS (S.D. N.Y.) (class counsel in a data breach class action settlement; final approval granted Feb. 2021);

c.  *Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (appointed class counsel; final approval granted Dec. 2020);

d.  *Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (appointed class counsel; settlement valued at over $7 million; final approval granted Feb. 2021);

e.  *Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (Mr. Lietz appointed class counsel in data breach case involving 360,000 patients; final approval granted Aug. 2021);

f.  *Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2-00217-14 (Grays Harbor County Superior Court, State of Washington) (appointed class counsel in hospital data breach class action involving approximately 88,000 people; final approval granted Sept. 2020);

g.  *Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb.) (Mr. Lietz and Mr. Klinger appointed class counsel in data breach settlement, final approval granted September 2021);

h.  *Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington (Mr. Lietz was appointed class counsel in data breach case, final approval granted September 2021);

i.  *Martinez et al. v. NCH Healthcare System, Inc.*, Case No. 2020-CA-000996 (Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida) (Mr. Lietz appointed Settlement Class Counsel; final approval granted);

j.  *Carr et al. v. Beaumont Health et al.*, Case No. 2020-181002-NZ (Circuit Court for the County of Oakland, Michigan) (Mr. Lietz appointed co-class counsel in data breach case involving 112,000 people; final approval granted October 2021);

k.  *Klemm et al. v. Maryland Health Enterprises Inc.*, Case No. C-03-CV-20-022899 (Circuit Court for Baltimore County, Maryland) (appointed class counsel; final approval granted November 2021);

l.  *Cece et al. v. St. Mary's Health Care System, Inc. et al.*, Civil Action No. SU20CV0500 (Superior Court of Athens-Clarke County, Georgia) (appointed Settlement Class Counsel with Danielle L. Perry in data breach case involving 55,652 people; preliminary approval granted December 2021);

4

m. *Powers, Sanger et al v. Filters Fast LLC*, Case 3:20-cv-00982-jdp (appointed co-lead Settlement Class Counsel; preliminary approval granted November 2021).

n. *Garcia v. Home Medical Equipment Specialists, LLC*, Case No. D-202-cv-2021-06846 (Mr. Lietz appointed class counsel; preliminary approval granted January 2022);

o. *Baldwin et al. v. National Western life Insurance Company*, Case No. 2:21-cv-04066 (W.D. Mo.) (Mr. Lietz appointed co-class counsel; preliminary approval granted January 2022)

**The Litigation**

10.    Class Counsel have in fact zealously prosecuted Plaintiffs' claims against Filters Fast in two separate lawsuits that were simultaneously pending in two separate federal courts – the United States District Court for the Western District of Wisconsin, and the United States District Court for the Western District of North Carolina.

11.    The cumulative effort and pressure applied by this "two-front war" that brought Filters Fast to the table to negotiate a possible resolution.

12.    It was the full briefing of twin motions to dismiss filed by Filters Fast in the North Carolina action – motions that were ultimately denied by the federal court in North Carolina – that brought about the possibility of settlement. *See McCreary v. Filters Fast LLC*, No. 3:20-CV-595-FDW-DCK, 2021 WL 3044228 (W.D.N.C. July 19, 2021).

13.    Class Counsel only reached a settlement after an extensive investigation, substantive (and successful) motions' practice, and prolonged arms' length negotiations presided over by an immensely talented mediator and former federal court judge, The Honorable Wayne Andersen (Ret.).

14.     Even after coming to an agreement on the central terms, Class Counsel negotiated for weeks over the fine points of the settlement, including heightened notice consisting of two rounds of email notice for the Class.

15.     Class Counsel worked for weeks to finalize the Settlement Agreement and associated exhibits (such as the Class notices and claim form) pertaining to notice, preliminary approval, and final approval. Class counsel moved for preliminary approval twice – responding to and satisfying the Court's concerns about jurisdiction.

**The Settlement Agreement**

16.     The Settlement Agreement in this case provides for monetary relief, credit monitoring services, and equitable relief for Settlement Class Members.

17.     Specifically, the Settlement Agreement provides for: (1) up to $750 per Settlement Class Member in expense reimbursements, with no aggregate cap; (2) up to $60 per Settlement Class Member in compensation for lost time with no aggregate cap; or (3) up to $25 per Settlement Class Member with an aggregate cap of $175,000.

18.     To date, the Settlement Administrator Kroll has received and logged a total of 3,740 timely Claim Forms: (a) 3,639 Claim Forms filed online through the Settlement Website; and (b) 101 paper Claim Forms received through the USPS. Ex. 1, Supp. Kroll Dec. ¶ 14. The 3,740 timely claims represent 1.16% of the Class. *Id*.

19.     This claims rate compares favorably to similar data breach/security incident settlements. I am aware of and have researched other recent comparable data breach settlement claims rates, the 1.16% claims rate is completely consistent with other, recent, comparable settlements, including the following:

| *Fox v. Iowa Health Sys.*, U.S. District Court for the Western District of Wisconsin (Final Approval 3/4/2021) | .84% |
|---|---|
| *Orr et al. v. InterContinental Hotels Group, PLC et al.*, U.S. District Court for the Northern District of Georgia (final approval 9/2/2020) | .65% |
| *Perdue et al. v. Hy-Vee, Inc.*, U.S. District Court for the Central District of Illinois Peoria Division (7/21/2021) | 1.32% |

20.     The Settlement Agreement also provides for up to 24-months of 1-bureau credit monitoring provided by ID Experts and conservatively valued at $90 per Settlement Class Member, per year. See also Dec. of William Federman, filed as Ex. 2 to Pls.' Mot. for Prelim. Approval at Doc. 35-2.

21.     The Identity Protection service provided by ID Experts can be found here: https://www.idx.us/idx-identity/plans. This webpage shows it would cost a class member $9.95 per month to receive this particular ID monitoring and protection service secured by this Settlement.

22.     The value of this service is therefore not speculative – it is easily quantified as being worth exactly $9.95 per month for a 24-month period, which equals $119.40 per year, or $238.80 for the 24-month period secured by this settlement.

23.     These amounts are fully in line with the conservative estimates offered by Class Counsel (via a sworn declaration) in the original motion for attorneys' fees ($90.00 per year or $7.50 per month, which is the lowest retail value of comparable identity theft protection to $107.88 per Settlement Class Member).

24.     The potential value of this benefit to the Class is therefore up to $77,132,400 (if no Class Member had availed him or herself of the 12 months of coverage previously offered by Filters Fast, and claimed the full 24 months). The potential value might also be expressed as half that amount, or $38,566,200, if all Class Members had signed up for the coverage offered

7

previously and only claimed 12 months. Or, making a reasonable assumption that Class Members might occasionally be able to find a discount on the price of this service, the $29 million dollar figure previously offered by Class Counsel (which assumes an annual cost of only $90 per person) is supported by the actual retail cost of the actual service offered, as plainly expressed on the IDX website.

26.    Class Counsel also now has available to it actual claims data about how many Class Members have signed up for the identity protection benefit offered, and the value of that benefit. As of February 17, 2022, 2,914 Class Members signed up for credit monitoring. 164 claimants signed up for 12 months of coverage, and 2,750 claimants signed up for 24 months. This amounts to $676,281.00 of value actually claimed by Class Members that they would not (and will not) otherwise receive but for the proposed settlement.

26.    I also believe – based upon my experience in data breach litigation -- that providing this identity protection benefit to all Class Members is a critical and necessary element of this settlement. This benefit – a benefit that any Class Member can take without having any other claim at all (whether it be a claim for out-of-pocket expenses, lost time, or even the $25 "no documentation" claim) provides good and valuable consideration to each and every Class Member for the release that he or she is providing. Without this extremely valuable benefit, an argument might be made that some Class Member was giving a release without receiving any consideration for the release. That is why Class Counsel made the determination to bargain for and obtain 24 months of identity protection for the entire Class, as opposed to simply putting those dollars into cash payments that only a limited subset of the Class might potentially claim.

8

27.     The Settlement Agreement provides for equitable relief in the form of business practice changes designed to better protect Plaintiffs' and Settlement Class Members' private information in the future.

28.     In response to the Court's observations about this equitable relief, Class Counsel makes the following observations: first, Class Counsel's renewed fee request is predicated upon a straight lodestar analysis, and not upon any "percentage of the fund" analysis. Second, while all of the Court's observations about these business practice changes are correct, Class Counsel believes that the deterrent effect from filing these lawsuits had a material effect upon Filters Fast's decisions to make the business practice changes that it did, and to commit (albeit on a voluntary basis) to continue to make positive changes in the future.

29.     The Settlement Agreement provides for a reasonable service award to Plaintiffs in the amount of $2,500 each, subject to approval by the Court.

30.     The service award is meant to recognize Plaintiffs for their efforts on behalf of the Class, which include maintaining contact with Class Counsel, participating in client interviews, providing relevant documents, assisting in the investigation of the case, remaining available for consultation throughout settlement negotiations, reviewing relevant pleadings and the settlement agreement, and for answering Class Counsel's many questions.

31.     The Settlement Agreement also provides for an award of combined attorneys' fees and costs in an amount up to $320,000, negotiated only after the substantive terms of the Settlement had been agreed upon, and subject to approval by the Court. The parties considered the range of fee awards from other payment card data breaches that were considered comparable cases in negotiating the fee.

32.     As of the date of filing, I have received no objections to either the Settlement Agreement in general or to the proposed attorneys' fees, costs (the amount of which was made known to the Class via the Court-approved notice program) in particular.

## The Contingent Nature of the Case

33.     My Firm prosecuted  this case on a purely contingent basis. As such, the firm assumed a significant risk or nonpayment or underpayment.

34.     This matter has required me, and other attorneys at my Firm, to spend time on this litigation that could have been spent on other matters. At various times during the litigation of this class action, this lawsuit has consumed significant amounts of my time and my Firm's time, which is a small firm consisting of only four attorneys.

35.     Such time could otherwise have been spent on other fee-generating work. Because our Firm undertook representation of this matter on a contingency-fee basis, we shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.

36.     If not devoted to litigating this action, from which any remuneration is wholly contingent on a successful outcome, the time our Firm spent working on this case could and would have been spent pursuing other potentially fee generating matters.

37.     Litigation is inherently unpredictable and therefore risky. Here, that risk was very real, due to the rapidly evolving nature of case law pertaining to data breach litigation, and the state of data privacy law. Therefore, despite my Firm's devotion to the case and our confidence in the claims alleged against Defendant, there have been many factors beyond our control that posed significant risks.

10

38.     Class Counsel's fees were not guaranteed—the retainer agreement counsel had with Plaintiffs did not provide for fees apart from those earned on a contingent basis, and, in the case of class settlement, approved by the court.

## MLK'S TIME AND EXPENSES IN THE LITIGATION

39.     Due to the early stage of litigation and efficiency by which Class Counsel was able to obtain this significant settlement, costs and fees incurred by Plaintiffs are low.

40.     MLK maintains contemporaneous records of its time and expenses. These records are prepared and maintained in the ordinary course of business through software systems maintained by the firm.

41.     I prepared my declaration with the assistance of other lawyers and staff at the firm with knowledge of the matters reflected herein. I have personally reviewed the information supporting the fee and expense requests that are the subject of this declaration.

42.     As part of the preparation of my declaration, I reviewed the time and expenses incurred in this litigation to exercise billing judgment. These figures do not include any of the time billed for February 21-22, 2022 (as it was not feasible to include this time in this declaration and still meet the Court's filing deadline for the renewed petition for attorneys' fees of February 22, 2022), the anticipated additional time related to the Final Approval Hearing, or any additional time to administer the Settlement and finalize payments to Class Members.

43.     In reviewing the time and expenses, and in exercising my billing judgment, I have carefully reviewed the time entries for reasonableness, and endeavored to delete any time entries that could be viewed as duplication of work. To that end, I made certain specific adjustments to the billing records, as follows:

a.      Through February 20, 2022, the "raw" amount of time billed came to 252.5 hours representing $165,827.00.

b.      From that amount, I deducted all of the time billed by my law partner Gary M. Klinger (9.8 hours at $800 per hour = $7,840). While I believe that this time was both reasonable and necessary to the litigation effort, I have deducted this time in an effort to ensure no duplication of work.

c.      Pursuant to the Court's Order of February 15, 2022, I have deducted two time entries of my law partner Danielle L. Perry (one entry for 8.4 hours for work on the original final approval motion, and another entry for 7.8 hours for work on the original attorneys' fee motion) totaling 16.2 hours at $700 per hour, or $11,340. It is my good faith belief that the remaining amount of time billed by Ms. Perry was for work on the two motions upon which I relied in preparing the renewed motions.

d.      I deducted 23.7 hours of time billed by paralegal Morgan Beauchamp at $170, representing $4029, as pre-litigation work.

e.      I deducted the 0.2 hours at $170 per hour ($25) billed by Client Specialist Carol Corniliese.

f.      The total amount of time deducted was 49.9 hours of time, representing $23,234.

29.     After exercising billing judgment and making billing reductions based on my review of the records, the number of hours spent on this litigation by my firm, and the reasonable hourly rates, my firm's lodestar is reflected below.

## The Costs and Fees Incurred

44.     My firm has currently accrued $142,593 in reasonable attorneys' fees through February 20, 2022, as shown in the detailed billing records submitted in connection with the

12

renewed motion for attorneys' fees as Exhibit C. There were additional amounts billed on February 21-22, 2022 that are not included in this calculation. Class Counsel expects to accrue approximately another approximate $10,000-$20,000 finalizing the renewed motion for final approval, fee and service award motion, preparing for and attending the hearing on final approval, and monitoring and assisting Plaintiffs and class members with the claims process and settlement administration.

45.    My hourly rate has increased over time based on my experience and my accomplishments in my practice. I have been practicing law continuously since 1991 (31 years), and the rate for my time is commensurate with senior partners of that level of experience. The rate of $800 per hour that I charge for my time is also commensurate with hourly rates charged by my contemporaries around the country, including those rates charged by lawyers with my level of experience who practice in the area of data breach class litigation in the Seventh Circuit and across the nation.

46.    My law partner Gary E. Mason received an A.B. in Economics and Renaissance Studies from Brown University, where he graduated *summa cum laude* and Phi Betta Kappa. He received his J.D. from Duke Law School in 1987, where he was an editor of the Journal of Law and Contemporary Problems. After graduation, he clerked for the Hon. Andrew J. Kleinfeld of the United States District Court for the District of Alaska.

47.    Mr. Mason began the practice of law at Skadden Arps as a Litigation Associate. In 1990, he joined Cohen Milstein where he was the first Co-Chair of the Consumer Protection Practice Group and was elected to Partner in 2000. In 2002, he founded his own class action law firm, Mason LLP, now known as Mason Lietz & Klinger, LLP ("MLK"). From January 1, 2012, through March 13, 2020, he was a Partner at Whitfield Bryson & Mason LLP ("WBM"). For the

last 31 years, Mr. Mason has devoted my practice exclusively to the representation of plaintiffs in consumer class actions.

48.     Mr. Mason has been practicing law continuously since 1987 (35 years), and the rate for his time is commensurate with senior partners of that level of experience. The rate of $875 per hour that he charges for his time is also commensurate with hourly rates charged by contemporaries around the country, including those rates charged by lawyers with Mr. Mason's level of experience who practice in the area of data breach class litigation in the Seventh Circuit and across the nation.

49.     My law partner Danielle L. Perry graduated from the University of California, Berkeley in 2010 with a Bachelor of Arts in Peace and Conflict Studies. Ms. Perry graduated from Loyola Law School in 2013.  While in law school, she held an externship as a law clerk for the Honorable Victoria Chaney of the California Court of Appeals, worked with the Labor Division of the Los Angeles Office of the City Attorney. Ms. Perry has been practicing law continuously for 9 years in the areas of consumer class action litigation and wage and hour litigation.

50.     My rates, and those used by my law firm, are also commensurate with rates approved by courts within the Seventh Circuit.  Prior to submitting the motion for attorneys' fees, costs and expenses, I compared and confirmed my hourly rate, and the hourly rates of the other timekeepers below, with lawyers at other law firms whose practice is focused on data breach class litigation. Moreover, I routinely survey hourly rates charged by lawyers around the country in published surveys, and review continuously as part of my continuing education opinions rendered by courts on attorneys' fee requests. Again, based upon my research, our rates are within the range of lawyers with our level of experience, practicing in this area of law.

51.     These hourly rates have been approved by other courts. Most recently, hourly rates of $925 for Gary E. Mason, $800 for David K. Lietz, $700 for Danielle L. Perry, $170 for Taylor

14

Heath, and $170 for Sandra Martin were approved by the United States District Court for the Southern District of New York in *In re Deva Concepts Product Liability Litigation,* Case 1:20-cv-01234-GHW, Order Granting Motion for Attorneys' Fees, Document 129 (January 3, 2022); *see also* Document 121-1 (Declaration of Gary E. Mason detailing MLK billing rates, filed 10/01/21).

52.     My firm's lodestar of 216.6 hours as of January 27, 2022, amounts to $142,593. Additional time will be spent to prepare for and attend the Final Fairness Hearing, defend any appeals taken from the final judgment approving settlement, and ensure that the claims process and distribution of settlement proceeds to class members is done in a timely manner in accordance with the terms of the settlement.  I assert that the attorneys' fees sought in the motion for attorneys' fees are reasonable and seek fair and reasonable compensation for undertaking this case on a contingency basis, and for obtaining the relief for Plaintiffs and the Class. As set forth in the Settlement Agreement, the attorneys' fees, costs and expenses sought in this motion will not reduce the benefits payable to the class.

53.     The chart below reflects the amount of time spent by members of my firm and me in the prosecution of this case:

| Name | Title | Hourly Rate | Time Spent | Total Billed |
|---|---|---|---|---|
| Gary E. Mason | Partner | $875 | 20.3 | $17,551.00 |
| David K. Lietz | Partner | $800 | 124.8 | $99,840.00 |
| Danielle L. Perry | Partner | $700 | 29.3 | $20,510.00 |
| Taylor Heath | Paralegal | $170 | 10.4 | $1,768.00 |
| Morgan Beauchamp | Paralegal | $170 | 6.0 | $1020.00 |
| Sandra Martin | Paralegal | $170 | 11.5 | $1,955.00 |
| **TOTAL** | | | 202.3 | $142,593.00 |

54.     Prior to taking on Plaintiffs' case, I thoroughly researched Defendant's practices and Plaintiffs' legal claims by, among other things, conducting an independent investigation and

researching relevant data privacy statutes. This information was critical to my understanding of the nature of the Incident, the scope of potential damages and remedies, and the potential risks and benefits of continued litigation.

55.     The other attorneys at my firm and I devoted significant time and resources to this case, including:

a.     Conducting an investigation into the facts regarding Plaintiffs' claims and class members claims;

b.     Researching law relevant to and preparing Plaintiffs' class action complaint researching law relevant to and preparing class action complaint in the Western District of North Carolina;

c.     reviewing motions to dismiss filed by Filters Fast in the *McCreary* Action;

d.     filing an amended complaint in the *McCreary* Action;

e.     reviewing Filters Fast's re-filed motion to dismiss in the *McCreary* Action, splitting the motion into twin motions (one filed under Rule 12(b)(1)

f.     jointly moving with defendant to stay briefing on Filters Fast's motions in the *McCreary* Action pending the resolution of the voluntary mediation with Judge Andersen on March 31, 2021;

g.     preparing and filing detailed and substantive oppositions to Filters Fast's twin motions; reviewing reply briefs;

h.     researching law relevant to the defenses raised in Defendant's answer to the *McCreary* Action's Plaintiffs' complaint;;

i.     Preparing for and attending mediation with Judge Wayne Andersen (Ret.) of JAMS, including researching and preparing a detailed mediation

16

statement, as well as attending pre-mediation conferences and calls with Judge Andersen;

j.    Engaging in substantial post-mediation negotiations over the notice plan, and negotiating a second email notice;

k.    Negotiating and preparing the Parties' class action settlement agreement, along with the proposed class notice and claim form;

l.    Negotiating with settlement administration companies to secure the best notice plan practicable;

m.    Preparing and filing the amended complaint in this action, bringing together the *McCreary* Action with this action in order to consummate the settlement in one court;

n.    Reviewing and revising Plaintiffs' motion for preliminary approval of the class action settlement;

o.    Working with the Settlement Administrator to ensure the timely completion of Notice and processing of claims;

p.    Monitoring the claims process and corresponding with the Settlement Administrator regarding the same;

q.    Preparing the initial and renewed motion for attorneys' fees, costs, expenses, and an incentive award;

r.    Preparing Plaintiffs' initial and renewed motion for final approval of class action settlement;

s.    Closely monitoring evolving law regarding data security and its potential impacts on the case;

17

t.      Conferring with Plaintiffs throughout the case;

u.      Working with Plaintiffs to respond to Defendant's informal discovery requests

v.      Reviewing Defendant's information responses, and;

w.      Responding to Class Member inquiries regarding the claims process.

56.      Where possible, Class Counsel made efforts to carefully assign work so as to avoid duplication of efforts and have the work completed by the appropriate level of attorney.

57.      All books and records in this case regarding costs expended were maintained in the ordinary course of business, from expense vouchers and check records. I have reviewed the records of costs expended in this matter.

58.      My firm has also accrued $5,668.75 in out-of-pocket expenses pertaining to this litigation. The expenses are comprised of filing and pro hac fees, as well as costs paid to local counsel. These costs are reasonable, and necessary for the litigation. These costs are

| Description | Amount | Total Per Category |
|---|---|---|
| **Court Fees** | | **$100.00** |
| *Pro Hac Vice* Filing Fee – WD Wis | $100.00 | |
| **Mediation Fees** | | **$5,568.75** |
| Mediation Fees | $5,568.75 | |
| **GRAND TOTAL** | | **$5,668.75** |

59.      Additional costs and expenses may be incurred before our work is done in this case, as is true of the additional services which we will provide to the Class.

60.      I have also reviewed the billing records of my North Carolina local counsel The Rhine Law Firm, which are included in the detailed billing records submitted contemporaneously

with this declaration. I have personal knowledge of the work The Rhine Firm performed on this case, and believe and declare that based upon the contemporaneous billing records that I reviewed, the $4,095 in attorneys' fees and $688.00 in costs accrued by The Rhine Firm are reasonable, and are based upon reasonable hourly billing rates.

61.     Notice in this case has been provided as agreed upon and as approved by the Court's Preliminary Approval Order and will be reported on more extensively in Plaintiffs' Renewed Motion for Final Approval of Class Action Settlement.

62.     As of February 17, 2022, the Settlement Administrator reports receiving 10 requests for exclusion. MLK has received no requests for exclusion.

63.     As of February 17, 2022, the Settlement Administrator reports receiving 0 objections to the Settlement or to the request for fees, costs, and service awards. MLK has similarly received no objections to the Settlement Agreement.

64.     Plaintiffs will file a declaration from the Settlement Administrator certifying completion of notice and detailing the status of the claims administration process with their renewed motion for final approval.

65.     I strongly believe that the Settlement Agreement is favorable for the Settlement Class. In the opinion of the undersigned and other Class Counsel, the settlement is fair, reasonable, adequate.

*     *     *     *     *     *     *     *     *     *     *     *     *

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed in Washington, D.C. on this 22nd day of February, 2022.

19

*/s/ David Lietz*

David Lietz (*admitted pro hac vice*)
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, D.C. 20016
Phone: (202) 429-2290
Fax: (202) 429-2294
gmason@masonllp.com

*Attorney for Plaintiffs and the Class*